**GEN–PROBE, INC., Plaintiff,**

v.

**AMOCO CORPORATION, INC., et al., Defendants.**

No. 95–0998J.

United States District Court, S.D. California.

April 24, 1996.

Mary S. Consalvi, Lyon and Lyon, La Jolla, CA, for Gen–Probe Inc.

John H. L'Estrange, Jr., Wright and L'Estrange, San Diego, CA, Charles E. Lipsey, Robert D. Bajefsky, Gerson S. Panitch, Howard W. Levine, Finnegan, Henderson, Farabow, Garrett and Dunner, Washington, DC, for Amoco Corporation, Amoco Technology Company, Gene–Trak Systems, Inc., and Vysis Inc.

Robert Berliner, Robbins, Berliner and Carson, Los Angeles, CA, for Regents of the University of California, Eric Stanbridge, PhD.

ORDER DENYING PLAINTIFF'S MO-
TION TO EXPEDITE AND CONSOL-
IDATE DISCOVERY; GRANTING IN
PART DEFENDANTS' MOTIONS TO
DISMISS; GRANTING DEFEN-
DANTS' MOTION TO STAY

JONES, District Judge.

## I. INTRODUCTION

On November 17, 1995, Plaintiff Gen–Probe, Inc. ("Gen–Probe") filed an amended complaint naming as Defendants Amoco Corporation ("AC"), Amoco Technology Company ("ATC"), Gene–Trak Systems, Inc. ("Gene–Trak"), Gene–Trak Systems Industrial Diagnostics Corp. ("GTSID"), and Vysis, Inc. ("Vysis") (collectively, "Amoco");[1] the Center for Neurologic Study, Richard A. Smith, and Ivor Royston (collectively, "CNS"); and The Regents of the University of California and Eric Stanbridge (collectively, the "Regents"). All defendants are charged with unfair competition, conspiracy to commit unfair competition, and violation of the Cartwright Act (Cal.Bus. & Prof.Code §§ 16700–16804). Amoco is charged with directly infringing, contributory infringing, and inducing the infringement of, U.S. Patents Nos. 4,851,330 (the "'330 patent") and 5,288,611 (the "'611 patent").[2] CNS and the Regents are charged with inducement of Amoco's infringement.

Before the Court are Plaintiff's Motion to Expedite and Consolidate Discovery, Defendants Amoco and Regents' Motions to Stay, and Defendants CNS, Amoco, and Regents' Motions to Dismiss.[3] For the reasons stated below, the Court denies the Plaintiff's discovery motion; grants the motions to stay; grants CNS' motion to dismiss; and grants in part the Regents and Amoco's motions to dismiss.

## II. RELATED LITIGATION

Gen–Probe's claims are based at least in part upon ATC's funding of CNS and the Regents' lawsuits, in which CNS and the Regents seek to establish an interest in Gen–Probe's patents. *See* First Amended Complaint ¶ 20 ("The Acts of unfair competition include ... Amoco ... carrying out a pattern of inducing others to sue Gen–Probe ...").

On December 14, 1993, CNS filed Civil Action No. 671765 in Superior Court, County of San Diego, claiming ownership rights in the Gen–Probe patents because the invention was allegedly reduced to practice by Dr. Kohne under a government grant naming CNS as the beneficiary. The case is currently pending before Superior Court Judge Jeffrey T. Miller.

On October 7, 1993, the Regents filed Civil Action 93–1539 [hereinafter "Regents v. Kohne"] in this Court, seeking a declaration of co-inventorship and conversion damages. The Regents claim that collaboration between Dr. Stanbridge and Dr. Kohne (Dr. Kohne is the inventor and assignor to Gen–Probe of the '330 and '611 patents) was so significant that the invention behind the patents in suit should be considered jointly conceived. The case is currently pending before this Court with a trial date of May 14, 1996.

## III. GEN–PROBE'S MOTION TO EXPEDITE AND CONSOLIDATE DISCOVERY

■ Gen–Probe argues that it needs information on Amoco's arrangements with CNS and Regents to prepare an unclean hands

---

1. Gene–Trak Systems, Inc., Gene–Trak System Industrial Diagnostics Corp., and Vysis, Inc. are subsidiaries of Amoco Technology Company, Inc.

2. In addition, AC and ATC are alleged to be liable for the infringing acts of Gen–Trak, GTSID, and Vysis, under an alter ego theory; and Vysis is charged with successor liability for Gene–Trak's infringement.

3. Amoco obtained a new hearing date of February 20, 1996 to resubmit its Rule 12 motions in response to the amended complaint. Plaintiff thereafter sought an emergency hearing on a motion to expedite and consolidate discovery.

The Court set up an expedited schedule to allow the following motions to be heard January 22, 1996: Plaintiff's Motion to Expedite and Consolidate Discovery, Defendants Amoco and Regents' Motions to Stay, and Defendant CNS' Motion to Dismiss. On February 13, 1996, the Court issued an Order denying the Plaintiff's discovery motion, dismissing CNS, and staying the suit. Since that time the Court has received motions to dismiss from Amoco and Regents. This Order supersedes the February 13, 1996 Order, and constitutes the Court's final ruling on all motions.

defense in the upcoming Regents trial. The Court rejects this argument for several reasons.

█ First, any time pressures Gen–Probe faces were brought about by its own delays. Gen–Probe attempts to blame others for its predicament, pointing to the very recent substitution of an equitable claim for restitution in the Regents case, following the dismissal of the conversion claim. However, it is well-established that equitable defenses such as unclean hands may be asserted against legal claims in general, *Fibreboard Paper Products Corp. v. East Bay Union of Machinists,* 227 Cal.App.2d 675, 728–29, 39 Cal.Rptr. 64 (1st Dist.1964), and that unclean hands may be asserted against conversion in particular, *Unilogic, Inc. v. Burroughs Corp.,* 10 Cal. App.4th 612, 621–23, 12 Cal.Rptr.2d 741 (6th Dist.1992). If Gen–Probe only now realized that it could assert this defense, it has only itself to blame.

Second, the doctrine of unclean hands would not even apply to the Regents case. The doctrine of unclean hands rests on the maxim that "he who comes into equity must come with clean hands." *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985). However, it is "not every wrongful act nor even every fraud which prevents a suitor in equity from obtaining relief. The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." *Fibreboard Paper Products Corp.,* 227 Cal.App.2d at 728–29, 39 Cal.Rptr. 64. The misconduct Gen–Probe complains of is the Regents' filing of its lawsuit with Amoco funding. Putting aside the rather serious question whether the filing of a lawsuit could be considered unclean hands, *cf. Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1132, 270 Cal.Rptr. 1, 791 P.2d 587 (Cal.1990) (discussing "policy of encouraging free access to the courts"), it is apparent that the Regents' subsequent decision to file a lawsuit has no bearing whatsoever upon "the transaction concerning which the complaint [was] made," i.e., Dr. Kohne's failure to name Dr. Stan-

bridge as a co-inventor of the patents in suit, his exclusive license to Gen–Probe, and the profits Gen–Probe enjoyed from the invention. For the doctrine of unclean hands to apply, Gen–Probe would have to prove misconduct by the Regents during one of the transactions forming the basis for the Regents' complaint. *See* John Norton Pomeroy, *Equity Jurisprudence* § 399 at 95–97 (Spencer W. Symons ed., 5th ed. 1941) ("The dirt on his hands must be his bad conduct in the transaction complained of."). Gen–Probe's allegations of misconduct do not relate to these transactions. The doctrine therefore would have no application to that case.

█ The Court also rejects Gen–Probe's arguments in favor of consolidating discovery, for three reasons. First, Judge Miller in the CNS case has rejected Gen–Probe's proposed amendment of its complaint to raise in that case the issues it seeks to raise in this action. Second, the Regents case is in a far more advanced procedural posture than this case. Third, most of the common discovery relates to allegations that this Court finds fail to state a viable claim. Thus even were the Court convinced it possessed the power to do so, it would decline to consolidate discovery in these cases, two federal and one state: comity and efficiency both weigh against consolidation.

The Court therefore denies Gen–Probe's motion in its entirety.

## IV. MOTIONS TO DISMISS

### A. Standard for Rule 12(b)(6) Dismissal

█ A motion under Rule 12(b)(6) tests whether the allegations of the complaint satisfy the requirement of Rule 8(a), which calls for a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Rules do not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). The complaint should be liberally construed in favor of the plaintiff,

and its factual allegations taken as true. *Oscar v. Univ. Students Co–Operative Ass'n,* 965 F.2d 783, 785 (9th Cir.), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

■ Generally, matters outside the pleadings should not be considered. Fed.R.Civ.P. 12(b). However, documents referred to in the complaint and forming a basis for the plaintiff's claims may be considered. *Venture Associates v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

B. Regents' Motion to Dismiss

1. Eleventh Amendment Immunity

■ The Regents of the University of California claim immunity from suit under the Eleventh Amendment, which has been construed to bar federal courts from hearing any claim against a state or an "arm of the state." *State Highway Comm'n v. Utah Const. Co.,* 278 U.S. 194, 199, 49 S.Ct. 104, 105–06, 73 L.Ed. 262 (1929). Whether a state entity is an arm of the state is determined by the application of a five factor test: "(1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has power to take property in its own name or only the name of the state, and (5) the corporate status of the entity." *Doe v. Lawrence Livermore Nat. Lab.,* 65 F.3d 771, 774 (9th Cir.1995) (citation omitted).

The first factor is the most significant. *Doe,* 65 F.3d at 774. In *Doe,* the Ninth Circuit carved a new "indemnification" exception to Eleventh Amendment immunity by holding that although the balance of the factors weighs in favor of immunity when the state treasury must pay judgment on the claim, the balance weighs against immunity when another entity must pay judgment on the claim because of an indemnification agreement. *Id.* at 774–76.[4] The *Doe* exception requires a contract obligating another party to pay the precise claim at issue. Section 2.7d of the Regents' "Exclusive License Agreement" with ATC provides ATC the option of financing the Regents' litigation "to secure legal title" to the '611 and '330 patents in return for exclusivity on the license option to those patents set forth in section 2.7a. Section 18.1 provides that ATC will indemnify the Regents for "any and all claims ... resulting from or arising out of exercise of this license or any sublicense."

The Regents, in their supplemental brief on the impact of the license agreement, assert that section 2.7d does not obligate ATC to pay the costs of Gen–Probe's claims against the Regents. ATC can pay the Regents' costs in the Regents v. Kohne lawsuit in return for exclusivity on a license option, but ATC is not obligated to indemnify the Regents for claims arising out of that lawsuit. Gen–Probe's contrary interpretation of this provision cannot control over the interpretation put forth by the party to the contract that would have the right to enforce the provision.[5]

■ Section 18.1, however, may apply to Gen–Probe's inducement of infringement claims. Section 18.1 obligates the Regents to indemnify Amoco for "any and all claims ... resulting from or arising out of exercise of this license or any sublicense." The license granted in the agreement is to "any subject matter claimed in or covered by ... [pending U.S. patent applications, serial nos. 191,852 and 707,725] by Eric Stanbridge and Ulf Gobel and assigned to The Regents." License Agreement, § 1.1; *see also id.* at § 2.1. Gen–Probe alleges that the Stanbridge/Gobel

4. After *Doe,* while it remains true that a state may not *create* immunity by extending indemnification to otherwise unprotected officials or entities, in the Ninth Circuit it may *destroy* immunity by accepting indemnification from sources outside the state treasury.

5. The doctrine of judicial estoppel would preclude the Regents from taking a contrary position in any future judicial proceedings relating to this contract. The doctrine of judicial estoppel

bars a party from taking inconsistent positions in successive judicial proceedings when a prior court adopted the now inconsistent position (majority view), or when the position was asserted in order to gain tactical advantage (minority view). *See Morris v. State of Cal.,* 966 F.2d 448, 452 (9th Cir.1992) (declining to decide whether majority or minority view should be adopted in the Ninth Circuit), *cert. denied,* 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992).

applications infringe the '330 patent. Opp. at 5. Because ATC would be obligated to pay the Regents' liabilities arising out of its licensing the Stanbridge/Gobel applications, the Regents does not have Eleventh Amendment immunity as to the two inducement of patent infringement claims.[6]

However, the Regents is immune from all other claims. Gen–Probe argues that because the Regents sued it in federal court in Regents v. Kohne, it should be deemed to have waived immunity in this case, citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994). *Genentech* was an application of the rule that filing suit in federal court constitutes consent to a full adjudication of that controversy. *Id.* at 947. Gen–Probe's state law claims do not arise from the transactions underlying the Regents' claim for co-inventorship in Regents v. Kohne,[7] and therefore do not constitute the same controversy.

Accordingly, only the inducement of infringement claims are not barred by Eleventh Amendment immunity, and only as against the Regents of the University of California, not Dr. Stanbridge.[8]

#### 2. Motion to Dismiss under Rule 12(b)(6)

The Regents also argue that the complaint fails to adequately allege inducement. However, as noted above, the license agreement between ATC and the Regents grants ATC the right to immediately begin producing products covered by the Stanbridge/Gobel patent application. Gen–Probe has alleged that this application infringes the '330 patent. These facts, if proven, could establish inducement. The inducement counts therefore may not be dismissed.

### C. CNS' Motion to Dismiss

#### 1. Motion to Dismiss Federal Claims Under Rule 12(b)(6)

The federal claims against CNS are for inducement of acts of infringement by Amoco of the '330 and '611 patents. Inducement requires that the defendant "knew or should have known that his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990). No reasonable juror could infer an intent to cause present acts of infringement from a licensing agreement effective at a future date and conditioned upon success of the putative licensor's attempt to establish an ownership interest.[9]

---

**6.** The Regents submit the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252, 96 Daily Journal D.A.R. 3499 (March 27, 1996) as relevant to the Court's analysis of the Eleventh Amendment issues in this case.

*Seminole Tribe* held that the Indian Commerce Clause does not give the power to abrogate a State's sovereign immunity. *Id.* at ——, 116 S.Ct. at 1118–19. Chief Justice Rehnquist's majority opinion stated generally that exclusive federal control over a subject area does not imply the power to abrogate state sovereign immunity in that area, *id.* at ——, 116 S.Ct. at 1129–32, and that only § 5 of the Fourteenth Amendment carries with it the power to abrogate. *Id.* at ——, 116 S.Ct. at 1114–32 (citing with approval *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (§ 5 of the Fourteenth Amendment permits abrogation); overruling *Pennsylvania v. Union Gas co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (Interstate Commerce Clause permits abrogation)).

If the issue were whether the patent code abrogates the state's immunity, then *Seminole Tribe* would apply, and would probably compel the conclusion that the patent code cannot abrogate a state's Eleventh Amendment immunity. In applying *Doe*, however, the court is attempting to discern which entities are states in the first place. *Seminole Tribe* does not affect the *Doe* exception.

**7.** *See supra* at 951–952 (rejecting applicability of unclean hands to Regents v. Kohne because of unrelatedness of these claims to the transactions underlying the claims in Regents v. Kohne).

**8.** Dr. Stanbridge claimed Eleventh Amendment immunity as a state official acting in his official capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Gen–Probe's opposition addressed only the University's claim to Eleventh Amendment immunity, and not the separate issue of Dr. Stanbridge's immunity. Pursuant to Local Rule 7.1(f)(3), failure to oppose a motion may be construed as consent to the granting of the relief requested. Dr. Stanbridge is therefore dismissed from this lawsuit with prejudice.

**9.** Because Gen–Probe's complaint references the license agreements between ATC, the Regents, and CNS, First Amended Complaint at ¶ 55, the Court may consider them despite the general

The additional facts enumerated by Gen–Probe at pages 18–19 of its opposition would not alter this analysis, as they have little or no probative value on the issue of CNS' intent to cause present acts of infringement. Because the allegations in the complaint, even if proven, would not support a claim for inducement of infringement, the federal claims against CNS are dismissed for failure to state a claim.

### 2. State Claims

Gen–Probe's state law claims against CNS are for unfair competition, conspiracy to commit unfair competition, and violation of the Cartwright Act. CNS argues that Gen–Probe's state law claims are barred by the *Noerr–Pennington* doctrine. Gen–Probe responds that the doctrine does not apply to state law claims, and that even if it did, it would not bar these claims.

a. Basis and Scope of the *Noerr* Immunity

The basic contours of the *Noerr–Pennington* doctrine were defined in three antitrust cases. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). *Noerr* held that the Sherman Act did not reach concerted efforts to influence the political branches of government. *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533. *Pennington* extended *Noerr* to efforts to influence administrative agencies. *Pennington*, 381 U.S. at 670–71, 85 S.Ct. at 1593–94. *California Motor Transport* extended *Noerr* to efforts to influence adjudicatory bodies. *California Motor Transport*, 404 U.S. at 513–14, 92 S.Ct. at 613–14.

These early cases gave contradictory indications as to the basis of the immunity.

*Noerr* itself purported to be an exercise in statutory construction: the Court reasoned that Congress could not have intended the Sherman Act to apply where it might burden First Amendment rights. *See Noerr*, 365 U.S. at 138–39, 81 S.Ct. at 530–31. *California Motor Transport*, however, explicitly relies upon the First Amendment right to petition in extending *Noerr* immunity to efforts to influence adjudicatory bodies. 404 U.S. at 510–11, 92 S.Ct. at 611–12; *see also Bill Johnson's Restaurants, Inc. v. National Labor Relations Board*, 461 U.S. 731, 741, 103 S.Ct. 2161, 2168–69, 76 L.Ed.2d 277 (1983) (characterizing *California Motor Transport* as having "recognized that the right of access to the courts is an aspect of the First Amendment right to petition").

Although the Ninth Circuit has never directly addressed this issue, its decisions in cases involving *Noerr* imply that the immunity should be seen as rooted in the First Amendment. In *Franchise Realty Interstate Corporation v. San Francisco Local Joint Executive Board of Culinary Workers*, the Ninth Circuit set up a heightened pleading standard for claims based upon petitioning activity because of the risk that frivolous claims could have a chilling effect on the exercise of First Amendment rights. 542 F.2d 1076, 1082–83 (9th Cir.1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). The *Franchise Realty* court explicitly stated its belief in the constitutionality of the *Noerr* immunity, and patterned its method after efforts by the Supreme Court to protect First Amendment rights in other contexts. *Id.* at 1082.

The majority of courts who have considered the issue have concluded that the immunity is constitutional and rooted in the First Amendment right to petition. *See, e.g., Computer Associates Int'l, Inc. v. American Fundware, Inc.*, 831 F.Supp. 1516, 1522–23 (D.Colo.1993); [10] *Sierra Club v. Butz*, 349

---

rule against using matters outside the pleadings on a motion to dismiss under Rule 12(b)(6). *Venture Associates*, 987 F.2d at 431.

**10.** *Computer Associates* also relies upon a statement in the Supreme Court's most recent decision on the *Noerr–Pennington* doctrine. In articulating a two-prong test for the doctrine's "sham" exception, the Supreme Court stated:

"Whether applying *Noerr* as an antitrust doctrine *or invoking it in other contexts,* we have repeatedly reaffirmed that evidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 58, 59, 113 S.Ct. 1920, 1927, 123 L.Ed.2d 611 (1993) (emphasis added) (citations omitted). The *Computer*

F.Supp. 934, 938–939 (N.D.Cal.1972); *Pacific Gas & Elec. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1130–37, 270 Cal.Rptr. 1, 791 P.2d 587 (1990) [*PG & E* ].

■ This Court agrees, and therefore holds that *Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity.

*Noerr* immunity therefore applies. What conduct does it protect?

Just as with the question of the basis of the immunity, the Supreme Court's seminal decisions provide contradictory indications as to the scope of the immunity. The conduct immunized in *Noerr* was a publicity campaign by certain railroads directed at securing adverse legislative results for the trucking industry. Relying upon both the people's rights to "freely inform the government of their wishes," *id.* at 138, 81 S.Ct. at 530, and upon the "right to petition," *id.* at 139, 81 S.Ct. at 530–31, the Court held that the publicity campaign could not form the basis for a Sherman Act violation, even if the campaign was deceptive. *Id.* at 145, 81 S.Ct. at 533. *California Motor Transport,* however, suggests in dictum that deceptions in the adjudicatory context would not be protected under the immunity. 404 U.S. at 513, 92 S.Ct. at 613.

The Ninth Circuit has reconciled the contradictions in these two cases by accepting them both, holding that *Noerr* immunizes a wider range of conduct in the political arena than before an adjudicatory body. *See Boone v. Redev't Agency of City of San Jose,* 841 F.2d 886, 895–96 (9th Cir.1988); *Hahn v. Codding,* 615 F.2d 830, 842 (9th Cir.1980). As to federal antitrust claims, this resolution settles the issue.

■ However, as to other federal claims, and in applying the immunity to state law claims, courts may not go beyond the constitutional basis for the immunity. If the immunity as developed with regard to federal antitrust claims goes beyond the constitutional basis for the immunity, its application to state law claims must be in a more limited form. *Cf. Whelan v. Abell,* 48 F.3d 1247, 1253–54 (D.C.Cir.1994) (suggesting that *Noerr* as developed with regard to federal antitrust claims may not be perfectly coextensive with First Amendment right to petition); Daniel R. Fischel, *Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the* Noerr–Pennington *Doctrine,* 45 U.Chi.L.Rev. 80, 102–07 (1977) (suggesting modifications to better align *Noerr* with the underlying right to petition).

But even as to state law claims, the Court is not writing upon a clean slate. The California Supreme Court has applied *Noerr* to state law claims. *See Blank v. Kirwan,* 39 Cal.3d 311, 320–321, 216 Cal.Rptr. 718, 703 P.2d 58 (1985) (applying immunity to Cartwright Act claim based upon "the First Amendment right to petition the government."); *PG & E,* 50 Cal.3d at 1130–37, 270 Cal.Rptr. 1, 791 P.2d 587.[11] If the California version of the immunity is broader than the version required under federal constitutional law, that broader version would apply to the state law claims in this case.

With these considerations in mind, the Court now turns to the specific exceptions and/or limitations to the immunity that Gen–Probe argues saves its claims against CNS.

### b. Knowingly False Statements

Gen–Probe argues that *Noerr* does not immunize knowingly false statements, and

---

*Associates* court found this statement, and the cases cited in support, persuasive evidence of "the [Supreme] Court's view that *Noerr–Pennington* is not limited to the antitrust arena." *Computer Associates,* 831 F.Supp. at 1522.

11. California courts have read *PG & E* as welcoming the application of *Noerr–Pennington* immunity to all torts, except malicious prosecution, where the gravamen of the complaint is the defendant's petitioning of courts or other governmental entities to take action. *See Hewlett–Pack-*

ard Co. v. Repeat–O–Type Stencil Manufacturing Corp., 1995 WL 552168, at *5 (N.D.Cal.1995) (unfair competition); *Ludwig v. Superior Court,* 37 Cal.App.4th 8, 21 n. 17, 43 Cal.Rptr.2d 350 (4th Dist.1995) (unfair competition); *see also Blank,* 39 Cal.3d at 320–21, 216 Cal.Rptr. 718, 703 P.2d 58 (Cartwright Act). The Court concludes that a California court faced with the same issue would find the immunity applicable to Gen–Probe's unfair competition, conspiracy to commit unfair competition, and Cartwright Act claims.

therefore does not protect the conduct alleged in its complaint.

■ *PRE* reserved the question of "whether and, if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations." *PRE*, 508 U.S. at 61, 113 S.Ct. at 1929 n. 6. Ninth Circuit cases since *PRE* have permitted claims to go forward where "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy". *Liberty Lake Investments, Inc. v. Magnuson*, 12 F.3d 155, 159 (9th Cir.1993) (dictum); *Hydranautics v. Filmtec Corp.*, 70 F.3d 533, 537–38 (9th Cir.1995) (intentional fraud in procurement of patent would deprive district court judgment of infringement in favor of patent holder of legitimacy, thereby eliminating its value as evidence of patent holder's probable cause to bring that infringement action). However, the plaintiff's complaint alleges only that the lawsuits and applications to administrative agencies were baseless or false. It fails to allege that they contain knowingly false statements, and fails to provide specific allegations that would when proven establish the knowing falsity of the statements. *Boone*, 841 F.2d at 886 ("Conclusory allegations are insufficient to strip [activities] of their *Noerr–Pennington* protection.").

■ Moreover, under California law only the tort of malicious prosecution may be maintained for any communication made by an interested party in the initiation or course of a judicial or quasi-judicial proceeding. Cal.Civ.Code § 47(2); *Silberg v. Anderson*, 50 Cal.3d 205, 215–216, 266 Cal.Rptr. 638, 786 P.2d 365 (1990).[12]

CNS' actions might be argued to constitute a course of conduct outside California's litigation-communication privilege. On that possibility, the Court now turns to the significance of the allegation that the CNS and Regents lawsuits were baseless.

### c. Sham Exception

*Noerr* recognized a possible exception to immunity where the petitioning activity was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor ..." *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533. *California Motor Transport* applied the "sham" exception to hold that "a pattern of baseless, repetitive claims" would fit within the exception as an attempt to "interfere directly with the business relationships of a competitor" by barring "meaningful access to the agencies and courts." *Id.* at 513, 92 S.Ct. at 613; *see also id.* at 518, 92 S.Ct. at 615 (Stewart, J., concurring).

The Supreme Court revisited the sham exception in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56–57, 113 S.Ct. 1920, 1926, 123 L.Ed.2d 611 (1993) [*PRE* ]. *PRE* set forth a two-part definition of sham litigation, containing an objective and a subjective component. To be a sham, a lawsuit must be both "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits," and subjectively aimed at interfering with the business relationships of a competitor. *Id.* 508 U.S. at 59–61, 113 S.Ct. at 1928. Objective baselessness was equated with the common-law standard of probable cause, which "requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* 508 U.S. at 61–63, 113 S.Ct. at 1929 (internal quotation marks and citations omitted). Because the objective prong of the test must be satisfied before the court can consider evidence of the subjective prong, a finding that the lawsuit is not objectively baseless precludes liability regardless of improper motive. *Id.*

California law goes even further. Under *PG & E*, the only cause of action that can be asserted against a party for initiating litigation is a claim for malicious prosecution. *PG & E*, 50 Cal.3d at 1137, 270 Cal.Rptr. 1, 791 P.2d 587 (only malicious prosecution ade-

---

**12.** Only the tort of malicious prosecution, with its requirement that the complained-of lawsuit be terminated in the party's favor, safeguards against the possibility of inconsistent findings in cases where the "baselessness" or "fraud" complained-of are the factual contentions that have a possibility of prevailing in another forum.

quately balances right of free access to the courts against the interest in being free from the cost of defending litigation). A claim for malicious prosecution requires the plaintiff to allege both: (1) "that the litigation was brought without probable cause," and (2) "that the litigation concluded in plaintiff's favor." *Id.* (remanding with instructions to affirm trial court's dismissal without leave to amend).

■ Measured against the *PG & E* standard, Gen–Probe's claims of "sham" must fail. Both the CNS and Regents lawsuits have survived motions for summary judgment.[13] A denial of summary judgment means that the nonmoving party has produced enough evidence that a rational jury could find in its favor. A party with sufficient evidence to support a jury finding in its favor has probable cause to bring a lawsuit. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F.Supp. 256, 261–262 (N.D.Ill. 1993) ("An action that is well enough grounded, factually and legally, to survive a motion for summary judgment is sufficiently meritorious to lead a reasonable litigant to conclude that they had some chance of success on the merits."). Further, Gen–Probe has not and cannot plead that the prior litigation terminated in its favor.

Gen–Probe, however, argues for the application of a different rule because its state law claims involve multiple proceedings. In *USS–POSCO Industries v. Contra Costa County Building & Construction*, 31 F.3d 800 (9th Cir.1994) [*USS–POSCO* ], the Ninth Circuit held that the *PRE* two-step inquiry does not apply in quite the same way to the situation identified in *California Motor Transport*, "where the defendant is accused of bringing a whole series of legal proceedings. . . . without regard for the merits and for the purpose of injuring a market rival." 31 F.3d at 810–11.[14] *California Motor Transport* sham claims, however, have two defining characteristics that Gen–Probe's claims fail to demonstrate.

■ The hallmark of a *California Motor Transport* sham claim is a pattern of baseless proceedings aimed at securing, through the very process of litigation, a benefit other than the prayed-for relief. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991) ("The 'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."). *California Motor Transport* itself dealt with multiple state and federal proceedings designed to "resist and defeat applications [by the plaintiffs] to acquire operating rights or to transfer or register those rights." 404 U.S. at 509, 92 S.Ct. at 611. Similarly, in *Hahn v. Codding* the Ninth Circuit found the exception applicable to a pattern of thirteen lawsuits when the very pendency of the lawsuits prevented the plaintiff from acquiring financing through the issuance of bonds. *Hahn*, 615 F.2d at 840–41. Gen–Probe alleges that CNS and Regents' claims are baseless and inconsistent, but there is nothing in the complaint that provides any reason to believe that Amoco, CNS, or Regents desire anything other than the relief sought in the lawsuits themselves: the transfer of some or all rights to the

---

13. Gen–Probe contends that it would be improper for the Court to consider facts outside the pleadings in ruling on CNS' motion to dismiss. The Court disagrees. The Court may take judicial notice of the decisions in the underlying state (CNS) and federal (Regents) lawsuits pursuant to Federal Rule of Evidence 201(e) because their existence is a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *See Transphase Systems, Inc. v. Southern Cal. Edison Co.*, 839 F.Supp. 711, 715 n. 5 (C.D.Cal.1993) (citing *Nugget Hydroelectric v. Pacific Gas and Electric*, 981 F.2d 429 (9th Cir.1992)); Charles Alan Wright et al., *Federal Practice & Procedure* § 1357 (1995) (court may take into account matters of public record, orders, and items appearing in the record of the case).

14. In entertaining this argument, the Court does not decide whether instituting two proceedings attacking the exclusivity of Gen–Probe's interests in the patents falls within the *PRE* or *California Motor Transport* rule because, as discussed below, under either rule the lawsuits do not constitute "sham" litigation. *Compare Ludwig v. Superior Court*, 37 Cal.App.4th 8, 29 n. 33, 43 Cal. Rptr.2d 350 (1995) (finding the *USS–POSCO* rule inapplicable where the plaintiff alleged only four acts, two of which could not have been said to be meritless).

patents in suit. While an allegation that suit was brought in order to inflict harm upon a market rival might provide an adequate basis for asserting an antitrust or unfair competition claim,[15] simply alleging that a lawsuit is brought for the purpose of inducing settlement negotiations is insufficient: this could be said of any lawsuit.

The second defining characteristic of a *California Motor Transport* claim is the baselessness of the pattern of litigation. *California Motor Transport* itself dealt with "a pattern of *baseless*, repetitive claims ..." 404 U.S. at 513, 92 S.Ct. at 613 (emphasis added); *see also Hahn*, 615 F.2d at 841 and 841 n. 13. *USS–POSCO* does not deviate from the requirement that the pattern of claims must be baseless as a whole; quite to the contrary, Judge Kozinski actually held that *Noerr* immunity barred an antitrust claim where the defendants had won fifteen of their twenty-nine lawsuits. *USS–POSCO*, 31 F.3d at 811. *See also PRE*, 508 U.S. at 58–59, 113 S.Ct. at 1927 ("Nothing in *California Motor Transport* retreated from these principles. Indeed, we recognized that recourse to agencies and to courts should not be condemned as a sham until a reviewing court has 'discern[ed] and draw[n]' the 'difficult line' separating objectively reasonable claims from 'a pattern of baseless, repetitive claims ... which leads the factfinder to conclude that the administrative and judicial processes have been abused.'") (quoting *California Motor Transport*, 404 U.S. at 513, 92 S.Ct. at 613).

Thus under either the *PRE* or the *USS–POSCO* test, Gen–Probe's claims against CNS must demonstrate objective baselessness. However, as noted before, both the CNS and Regents lawsuits have survived motions for summary judgment. Consequently, considering either the CNS suit alone, or the "pattern" of the CNS and Regents lawsuits,[16] the Court finds lacking the necessary component of objective baselessness.[17]

### d. Conspiracy Claims

 The conspiracy to unfairly compete and Cartwright Act claims both require an agreement to commit an unlawful act. *See Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 784–86, 157 Cal.Rptr. 392, 598 P.2d 45 (1979) (civil conspiracy requires common plan to commit unlawful act); Cal.Bus. & Prof.Code §§ 16700–16804 (banning agreements to restrain trade). CNS is charged with having conspired with Amoco to commit the acts analyzed above, and regarding Amoco's funding of the CNS and Regents litigation.

Although neither California's litigation privilege nor federal precedent on *Noerr* address this issue, the California Supreme Court has directly sanctioned third-party funding of litigation. In *PG & E*, the Court favorably reviewed cases that had applied *Noerr* to protect litigants from state tort counterclaims, and concluded that the same considerations should protect persons who induce or finance others' litigation. *PG & E*, 50 Cal.3d at 1130–37, 270 Cal.Rptr. 1, 791 P.2d 587. Given that the acts alleged to have been agreed to by CNS are protected under *Noerr* immunity as extended by the California Supreme Court, the conspiracy claims must fail.

---

**15.** Of course, such allegations would have to be sufficiently specific to meet the Ninth Circuit's heightened pleading standard.

**16.** The allegations that CNS published or sought action based upon the same allegations in communications with the U.S. Attorneys' office, the Department of Health and Human Services ("DHHS"), and the National Institute of Health ("NIH"), would not alter the analysis, for the same reason.

The Court finds the papers filed by the parties insufficient to determine the import of Judge Huff's ruling dismissing CNS' counterclaim in a now-terminated federal case. The Court cannot use this ruling as a basis for questioning the state court's refusal to grant Gen–Probe's motions to dismiss the pending CNS case. At most, the ruling might be a proceeding terminated in Gen–Probe's favor, possibly providing a basis for a malicious prosecution claim if Gen–Probe can establish that the claims were brought without probable cause. That would at most constitute a third proceeding, still not bringing Gen–Probe's claim any closer to a viable claim of a pattern of baseless litigation.

**17.** The above analysis also indicates the Court's disagreement with Gen–Probe that any of the allegations in its complaint—for example, the allegation that the litigation was brought in order to secure a better bargaining position—state a claim for unfair competition apart from protected litigation activity.

### D. Amoco's Motion to Dismiss

#### 1. Motion to Dismiss Federal Claims under Rule 12(b)(6)

Amoco's first basis for its motion to dismiss is that "there is no evidence or even allegation that the relationship between parent and subsidiary is a 'sham'" justifying the setting aside of corporate formalities to allow plaintiff to recover against the parent. It supports this assertion with multiple declarations stating that corporate formalities were observed. The Court declines to take notice of these declarations on a motion to dismiss. *See* Fed.R.Civ.P. 12(b) (court should limit itself to pleadings). The Court further notes that the complaint adequately charges AC and ATC with alter ego liability at paragraph 60. This portion of the motion to dismiss therefore must be rejected.

■ Amoco also moves to dismiss the patent infringement claims against them on the basis that the complaint fails to allege any acts constituting infringement on the part of these defendants. The First Amended Complaint clearly does name each of these actors as having actually, contributorily, and by inducement of others, infringed the patents in suit. *See* First Amended Complaint at ¶ 58, 65. The Complaint does so, however, in a confusingly conclusory manner, accusing each of five defendants of three very differ-ent causes of action [18] on two different patents, all in one conclusory sentence, without adequately specifying the grounds for plaintiff's belief that any of these entities have infringed.[19]

■ The Federal Rules do not require that the plaintiff plead with particularity the specific patent claims that have been infringed, but the Rules do require that the defendant be given "fair notice of [1] what the plaintiff's claim is and [2] the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 102–03. The plaintiff's shotgun approach is clearly deficient to serve either of these purposes.

■ The complaint fails to provide fair notice of what the plaintiff's claims are. Each of the five defendants is accused of each of the three different types of infringement: What is labeled as "Count 1" of the complaint actually consists of Counts 1 through 3. It is unclear which of the five is accused of which type of infringement. Within each of the patent "counts," Paragraphs 58 and 65 accuse all defendants of all types of infringement. Paragraphs 59 and 66, after accusing all defendants of making infringing "reagents or kits," specify that certain *Gene–Trak* products are believed to directly infringe the patents in suit. Para-

---

**18.** To prove actual infringement under 35 U.S.C. § 271(a), the plaintiff must show that the defendant made, used, or sold a product or process encompassed by at least one valid claim of a patent (literal infringement); or that the accused product or process performs substantially the same function in substantially the same way to achieve substantially the same result as at least one claim of the patent, provided that the accused product or process incorporates every element or a substantial equivalent of every element of the claim (infringement under the doctrine of equivalents). *See* 35 U.S.C. § 271(a); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 952 (Fed.Cir.1987) (en banc) (Nies, J., additional views), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

To prove contributory inducement of infringement under 35 U.S.C. § 271(c), the plaintiff must show that the defendant sold a material component of a patented invention, knowing that the component was especially adapted for use in the invention and that it was not a staple article of commerce suitable for substantial noninfringing use. *Preemption Devices v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed.Cir.1986).

To prove active inducement of infringement under 35 U.S.C. § 271(b), the plaintiff must show both (1) an act by the defendant actually calculated to induce another to infringe, and (2) the culmination of the defendant's acts in a direct infringement by another. *H.B. Fuller Co. v. Nat'l Starch & Chemical Corp.*, 689 F.Supp. 923, 943 (D.Minn.1988); *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990) (plaintiff must show "actual intent to cause the acts which constitute the infringement").

**19.** "Upon information and belief, [each of the defendants] with actual knowledge of the '330 Patent, are willfully and deliberately infringing the '330 Patent or contributing to or inducing said infringement in the United States, and within this district, by making, using, selling and/or offering for sale products and/or kits without the authority of Gen–Probe and in violation of 35 U.S.C. § 271, and will continue to do so unless enjoined by the Court." First Amended Complaint at ¶ 58. Paragraph 65 similarly accuses all five defendants of the same counts with respect to the '611 patent.

graphs 60 and 67 allege that Amoco and ATC exercised sufficient control over subsidiaries Gene–Trak and Vysis that Amoco and ATC should be liable for the infringing acts of these subsidiaries. It is unclear whether the subsequent paragraphs should be read as limiting the claims made in paragraphs 58 and 65, or whether they simply provide supporting allegations for certain of these claims without eliminating the claims not supported by those allegations.[20] Even were there no other deficiencies, this confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint. *See Gauvin v. Trombatore,* 682 F.Supp. 1067, 1071 (N.D.Cal.1988) (lumping together of multiple defendants in one broad allegation fails to satisfy notice requirement of Rule 8(a)(2)); *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (E.D.Wis.1975) ("Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently.").

The complaint also fails to provide fair notice of the grounds of the various claims. Rule 8(a)(2) eliminates the needless distinctions and technicalities of code pleading, but still "envisages the statement of circumstances, occurrences, and events in support of the claim ..." Advisory Committee's 1955 Report, *reprinted in* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1201 at 67 n. 11 (1990). The *Conley* standard, that a complaint should "not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," 355 U.S. at 45–46, 78 S.Ct. at 101–02, "has never been taken literally." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984) (Posner, J.). A motion to dismiss under Rule 12(b)(6) requires the Court to decide whether the facts outlined or reasonably foreshadowed in the complaint could

entitle the plaintiff to relief. A conclusory assertion of entitlement to relief is insufficient because it provides the Court no information with which to determine whether the plaintiff's grievance arises under a legal theory for which the law affords a remedy. Even under liberal notice pleading, the plaintiff must provide facts that "outline or adumbrate" a viable claim for relief, not mere boilerplate sketching out the elements of a cause of action. *Sutliff,* 727 F.2d at 654; *Roth v. United States,* 952 F.2d 611, 613 (1st Cir.1991) ("In performing the requisite tamisage and assessing sufficiency, a court must accept as true the complaint's well-plead factual averments, excluding, however, bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation.") (internal citation and quotation marks omitted); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 at 156–59 (1990) (complaint must contain "either direct allegations on every material point necessary to sustain a recovery on any legal theory ... or allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial").

The requirements of Rule 11 further buttress this conclusion. Rule 11 requires the signatory to a complaint to certify that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R.Civ.P. 11(b)(3). This certification requirement imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing ..." *Business Guides, Inc. v. Chromatic Communications Enter.,* 498 U.S. 533, 551, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991) (upholding sanctions against party for filing complaint of copyright infringement later disclosed to have no factual basis). The answering defendant

---

**20.** This confusion is reflected in the parties' submissions on this motion to dismiss. Defendants' motion to dismiss does not even mention contributory and inducement infringement. The text of plaintiff's opposition papers describes their theory against Amoco and ATC as "direct infringement," but the caption of that section describes

their theory as either contributory or inducement infringement. The supporting allegations pointed out in this section of the plaintiff's papers—financing of others' infringing activity, obtaining certain licensing agreements, etc.—would support only an inducement theory, not direct *or* contributory infringement.

faces a parallel requirement to certify that "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." Fed.R.Civ.P. 11(b)(4). Rule 11's requirement of certification of the well-foundedness of the factual contentions of the complaint would be meaningless unless Rule 8(a)(2) required some minimum allegations of fact to support the claim. Similarly, the requirement that the defendant investigate and certify its denials of the plaintiff's factual contentions would be meaningless if the plaintiff were not required to make any factual contentions in its complaint. In short, the purpose and design of Rule 11 compel the conclusion that Rule 8(a)(2) requires more than empty boilerplate. *See Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986) (the two major problems the rule aims to resolve are "frivolous filings" and "misusing judicial procedures as a weapon for personal or economic harassment"); Advisory Committee Note to 1983 Amendment, 97 F.R.D. 198–99 (1983) (rule imposes duty to conduct "prefiling inquiry into both the facts and the law"; district courts encouraged to pay "[g]reater attention ... to pleading and motion abuses ... to streamline the litigation process by lessening frivolous claims or defenses").

As a complaint for direct or contributory infringement, the complaint is deficient as to all but Gene–Trak: it charges Gene–Trak with production of infringing products (¶ 59, 66), but is devoid of any reference to infringing products (or contributorily infringing components) produced by the other defendants. AC and ATC are adequately charged with alter ego liability (¶ 60); ATC is adequately charged with inducement infringement.[21] *Vysis is adequately charged with successor liability for Gene–Trak's infringement (¶ 6). Beyond this, the complaint fails to state a recognizable claim for relief.*

If the plaintiff desires to replead some or all of its claims, the plaintiff's amended complaint should be revised as follows to conform with the requirements of notice pleading:

1. Each count of the complaint should be limited to one cause of action. Direct infringement, contributory infringement, and inducement of infringement are three different causes of action.

2. Defendants may be accused of a violation only by supporting allegations that specifically refer to that defendant. Each supporting allegation should be stated in a numbered paragraph limited to one transaction or occurrence. Fed.R.Civ.P. 10(b) ("All averments of a claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited in so far as practicable to a statement of a single set of circumstances ...").

3. The supporting allegations must provide the basis for the claims, keeping in mind Rule 11's requirement of an inquiry reasonable under the circumstances. Filing a patent infringement action pointing vaguely to "products and/or kits" (¶ 58 and 65) does not provide adequate notice as required by the Rules, and does not reflect the reasonable inquiry required by the Rules.

4. Supporting allegations should be plead or incorporated by reference within each count. The present complaint first rambles through 40 allegations that it labels "common to all causes of action," and then in each enumerated count realleges every allegation without differentiation between defendants and claims. This will not be adequate in the amended complaint. Each count should distinguish and identify which allegations relate to which claims, and which defendants. *See* Fed.R.Civ.P. 10(b) ("Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth.").

### 2. State Claims

The state law claims against Amoco are for unfair competition, conspiracy to commit unfair competition, and violation of the Cartwright Act. Amoco argues that Gen–Probe's claims are barred by *Noerr* immunity. Having already rejected Gen–Probe's argument

---

**21.** The Regents–ATC License Agreement could provide a basis for the inducement claim as to ATC. AC, however, was never a party to those agreements.

that *Noerr* does not apply to state law claims, the Court turns directly to whether they fall within the scope of that immunity.

Gen–Probe contends that Amoco engaged in a long-term plan to wrongfully obtain an interest in the '330 and '611 patents. The complaint alleges that in pursuit of this plan, Amoco executed agreements with CNS and Regents agreeing to indemnify and fund their lawsuits against Gen–Probe in exchange for licenses to any rights obtained if the lawsuits proved successful; it conspired with CNS to misrepresent facts to the NIH; it duplicitously obtained confidential information which it used to set up companies that infringe on Gen–Probe's patents; and it published to third parties that Gen–Probe does not have title to the patents, offering licenses to the technology.

The discussion of *Noerr* with regard to CNS indicates that the allegations as to funding litigation and contacting the NIH concern activity protected by *Noerr* and by Civil Code section 47(2). The allegation that Amoco published its belief that it would obtain an interest in Gen–Probe's patents and marketed an interest in this contingency is likewise precluded by *PG & E* 's expansion of *Noerr* to include ancillary activity. *See PG & E*, 50 Cal.3d at 1124, 270 Cal.Rptr. 1, 791 P.2d 587 (defendant had "conducted a marketing campaign to solicit buyers" for the contingent interest).

The allegation that Amoco duplicitously obtained confidential information that it later refused to return and instead used to infringe Gen–Probe's patents, however, may state a viable claim for unfair competition.

However, the conspiracy claims—conspiracy to commit unfair competition, and Cartwright Act—are dismissed because Amoco is not alleged to have agreed with CNS or the Regents to commit any unlawful acts. *See supra*, section IV(C)(2)(d).

---

**22.** Note that Amoco must be found to infringe before the Regents may be found to have induced its infringement. *Moleculon Research Corp. v. CBS, Inc.*, 872 F.2d 407, 410 (Fed.Cir.1989) ("In

## V. MOTIONS TO STAY

Courts within the Ninth Circuit have discretion to stay pending actions. This discretion should be exercised according to the following standard:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship of inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir.1972), *cert. denied*, 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973).

Amoco argues first that if either the Regents or CNS were to prevail, "the underlying basis for [the patent infringement claims] will disappear because the conduct alleged by Gen–Probe in this case to be infringing will be authorized by license from [the Regents] and/or CNS." However, the license agreements between ATC, the Regents, and CNS provide an option to license conditioned upon the success of the CNS or Regents litigation. Neither agreement would excuse any current acts of infringement.

Amoco's second argument is that if CNS were to succeed in its claims against Gen–Probe, Gen–Probe would be deprived of any ownership interest in the patents in suit, and would lack standing to complain even of Amoco's current acts of infringement.[22] In response, Gen–Probe argues that the CNS litigation is baseless, citing certain rulings against counterclaims asserted by CNS in a terminated federal case. The Court rejects this for two reasons. First, it would be an extreme affront to the state court for this Court to rule that the litigation is baseless. Second, Gen–Probe fails to explain why, if the litigation is so baseless, it has failed to

the absence of direct infringement, [a person] cannot be held liable for inducing infringement under section 271(b).").

get the action dismissed within that forum. Because of the massive costs that proceeding with this litigation would entail for the parties and the court, and because Gen–Probe fails to make any persuasive arguments as to the prejudice it might suffer from a stay, the Court grants the defendants' motion to stay this action until the conclusion of the CNS litigation.

## VI. CONCLUSION AND ORDER

Gen–Probe's motion to expedite and consolidate discovery is denied. Gen–Probe can obtain whatever discovery it needs in each case within the confines of that case.

Gen–Probe's state claims against The Regents of the University of California and Eric Stanbridge are dismissed with prejudice because of Eleventh Amendment immunity. The two federal claims of inducement of patent infringement against The Regents of the University of California may be barred by Eleventh Amendment immunity, but that cannot be decided without a determination of whether the Stanbridge/Gobel patent application infringes the '330 patent. Stanbridge is dismissed with prejudice from the patent infringement counts.

Gen–Probe's claims against the Center for Neurologic Study, Richard A. Smith, and Ivor Royston are dismissed with leave to amend. Gen–Probe's federal claims fail because the allegations in the complaint do not amount to a viable claim of inducement. The state claims are barred by petitioning immunity.

Gen–Probe's federal claims against Amoco Corporation, Amoco Technology Company, Gene–Trak Systems, Inc., Gene–Trak Systems Industrial Diagnostics Corp., and Vysis, Inc., are dismissed with leave to amend, except that four claims are stated as plead in the present complaint: the claims of direct infringement against Gene–Trak Systems, Inc., the claims of alter ego liability against Amoco Corporation and Amoco Technology Corporation, the claim of inducement infringement against Amoco Technology Corporation, and the claim of successor liability against Vysis. Gen–Probe's claims of conspiracy to unfairly compete and for violation of the Cartwright Act are dismissed with prejudice. The claim of unfair competition survives.

Because Gen–Probe's claims of direct infringement against Gene–Trak, and of inducement of infringement against Amoco Technology Corporation and The Regents of the University of California, require Gen–Probe to win the CNS case, the Court stays all further proceedings in this case until the termination of the CNS case. Gen–Probe is ordered to provide the Court with a copy of the judgment of that case within five days of receipt.

Gen–Probe may, within 20 days of receipt of this Court's Order lifting the stay, file an amended complaint realleging those claims that were dismissed with leave to amend, provided that the amendment cures the defects noted in this Order.

All pending motions not specifically addressed in this section are hereby stricken from the calendar.

**IT IS SO ORDERED.**