DYNAMIS, INC. and John A.
Caramanian, Plaintiffs,

v.

LEEPOXY PLASTICS, INC.
and Lawrence H. Lee,
Defendants.

Civ. No. F 92–81.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 8, 1993.

652

---

John F. Hoffman, Baker and Daniels, Fort Wayne, IN, pro se as mediator.

Robert T. Keen, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, Roger W. Healey, Cincinnati, OH, Stephen D. Scanlon, Cleveland, OH, for plaintiffs Dynamis, Inc. and John A. Caramanian.

D. Randall Brown, Bobby B. Gillenwater, Barnes and Thornburg, George Pappas, Pappas Law Offices, Fort Wayne, IN, Stephen T. Belsheim, Belsheim Law Offices, Clarksville, TN, for defendants Leepoxy Plastics, Inc. and Lawrence H. Lee.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' motion for partial summary judgment. The parties have fully briefed the issues. For the following reasons, defendants' motion will be granted.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 251, 106 S.Ct. at 2512; *In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling

on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511.

 Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

### Discussion

On February 17, 1976, Patent No. 3,939,-020 (the '020 patent), was issued and is now in full force and effect. Plaintiff John A. Caramanian holds title to the '020 patent and plaintiff Dynamis, Inc. is a licensee of the patent. The Abstract of the '020 patent describes the patent as "A method of balancing a rotor. An epoxy resin balancing composition is applied to the rotor and the rotor is dynamically tested before the resin is cured." The original application for this patent was filed on September 18, 1969, claiming only a composition for balancing a rotor. The patent examiner held that the epoxy material *per se,* even when used as a rotor balancing

compound, was unpatentable and the Board of Appeals affirmed the examiner's decision. Thus, it is uncontroverted that the epoxy material *per se* of the '020 patent is not covered by a patent and that such material is public domain. The '020 patent covers only the *method* of balancing rotors by applying epoxy.

Plaintiffs have filed suit under 35 U.S.C. §§ 271(b) and (c) alleging that the defendants have infringed and are now infringing the '020 patent by actively inducing infringement of said patent, and/or engaging in contributory infringement.[1] Plaintiffs are seeking damages and are requesting that the court order the defendants to deliver to the court for destruction all of defendants products that infringe, induce infringement, or contribute to the infringement of the '020 patent.[2]

Defendant Leepoxy Plastics, Inc. ("Leepoxy") is a custom formulator and manufacturer of epoxy compounds. Leepoxy claims that its first exposure to epoxy balancing compounds occurred in about 1978 when the motor division of General Electric in Fort Wayne, Indiana, contacted Leepoxy. General Electric requested Leepoxy to formulate an epoxy balancing compound that would replace the compound they then used, which was supplied by Commercial Chemical Company, the predecessor to Dynamis, Inc. Leepoxy formulated such a balancing compound and since that time Leepoxy has developed, manufactured, and sold various epoxy balancing compounds.

Defendants have filed a motion for partial summary judgment requesting that the court rule that the defendants did not infringe the '020 patent under 35 U.S.C. § 271(b) or (c) prior to March 17, 1992, and plaintiffs are not entitled to any damages for sales made by Leepoxy prior to that date.

35 U.S.C. §§ 271(b), (c) provide that:

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

---

1. During a discovery conference held on October 26, 1992, it was agreed that plaintiffs' claim of direct infringement under 35 U.S.C. § 271(a) would be withdrawn by stipulation.

2. During the initial pre-trial conference on May 21, 1992, plaintiffs abandoned their request for injunctive relief.

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

In a letter dated March 3, 1992 (which defendants claim they did not read until March 17, 1992), plaintiffs' attorney informed Leepoxy that it believed Leepoxy was infringing the '020 patent. Defendants' patent counsel briefly responded to the letter on March 26, 1992 and plaintiffs filed this action on April 21, 1992.

In support of their motion for partial summary judgment, defendants claim that a key element to establishing inducement of infringement and contributory infringement is that the accused infringer must have actual knowledge of both the patent and the infringement. Defendants further claim that inducement of infringement requires as an additional necessary element, an actual intent to induce another to infringe. Defendants submit to the court that there is no issue of material fact that defendants did not have the requisite actual knowledge and intent prior to reading the letter of March 3, 1992 on March 17, 1992, and that plaintiffs are not entitled to damages as a matter of law prior to that date.

### A. Section 271(c)—Contributory Infringement

In *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 487–90, 84 S.Ct. 1526, 1533–34, 12 L.Ed.2d 457 (1964), the Supreme Court established that to be liable for contributory infringement the accused infringer must know of the patent and also know of the infringement. The Court stated:

[T]he language of § 271(c) presents a question, apparently not noticed by the parties or the courts below, concerning the element of knowledge that must be brought home to Aro before liability can be imposed. It is only sale of a component of a patented combination *"knowing* the same to be especially made or especially adapted for use in an infringement of such patent" that is contributory infringement under the statute. Was Aro "knowing" within the statutory meaning because—as it admits, and as the lower courts found—it knew that its replacement fabrics were especially designed for use in the 1952–1954 Ford convertible tops and were not suitable for other use? Or does the statute require a further showing that Aro knew that the tops were patented, and knew also that Ford was not licensed under the patent so that any fabric replacement by a Ford car owner constituted infringement?

On this question a majority of the Court is of the view that § 217(c) does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing. (Footnote omitted). With respect to many of the replacement-fabric sales involved in this case, Aro clearly had such knowledge. For by letter dated January 2, 1954, AB informed Aro that it held the Mackie–Duluk patent; that it had granted a license under the patent to General Motors but to no one else; and that "It is obvious from the foregoing and from an inspection of the convertible automobile sold by the Ford Motor Company, that anyone selling ready-made replacement fabrics for these automobiles would be guilty of contributory infringement of said patents." Thus the Court's interpretation of the knowledge requirement affords Aro no defense with respect to replacement-fabric sales made after January 2, 1954. It would appear that the overwhelming majority of the sales were in fact made after that date, since the oldest of the cars were 1952 models and since the average life of a fabric top is said to be three years. With respect to any sales that were made before that date, however, Aro cannot be held liable in the absence of a showing that at that time it had already acquired the requisite knowledge that the Ford car tops were patented and infringing.

As *Aro* makes clear, the focus in a contributory infringement claim is on whether the accused infringer knows that the intended use of the product will infringe a known patent.

■ For purposes of this motion defendants Lee and Leepoxy will assume they had knowledge that the '020 patent number was on one of Dynamis' containers of EPO Dynaweight, an epoxy balancing compound. Defendants argue that merely seeing the '020 patent number is insufficient to establish that defendants had actual knowledge that the method of balancing rotors using Leepoxy's compound is patented and that this method was infringed when Leepoxy's customers used Leepoxy's compound to balance their rotors. Defendants point out that plaintiffs never contacted the defendants until the letter of March 3, 1992 and claim that there is no evidence of record that defendants had any idea that the method practiced by its customers may have been patented or that it would be infringing or that Leepoxy's customers were not entitled to practice the method because it would constitute infringement. Defendants argue that they never saw the patent, and were never notified or warned (until the letter. of March 3, 1992) that a method of balancing rotors was patented or that supplying an epoxy compound in the normal course of business could constitute a form of infringement.

Plaintiffs, in response, claim that "the deposition of Bruce Puryear and the affidavit of John A. Caramanian are compelling evidence of Defendants' actual knowledge of Plaintiff's patent-in-suit and of Defendants' disregard for Plaintiff's patent rights." Mr. Puryear was Leepoxy's salesman from June 1990 until March 1992. During his employment with Leepoxy, Mr. Puryear testified that he saw plaintiff's Dynaweight white plastic container on the business premises of virtually every customer and prospective customer he called upon. Mr. Puryear also testified that the only way he had any success recruiting new customers was to convince the potential customers that Leepoxy could improve on Dynaweight.

Further, Mr. Puryear testified that during the first two weeks of his employment, Mr. Lee took an empty Dynaweight white plastic container off a shelf in his lab, showed it to Mr. Puryear, instructed Mr. Puryear that Dynaweight was Leepoxy's main competitor, and told Mr. Puryear to look for Dynaweight when he met with customers or potential customers. Mr. Puryear testified that the container Mr. Lee showed him was a white plastic tub with black printing on it. Although Mr. Puryear did not see a patent number on the Dynaweight container, Mr. Puryear testified that he assumed Dynaweight was patented because of the large volume that was sold and thinks he saw an advertisement for Dynaweight that listed a patent number on the bottom of the page. Plaintiff John A. Caramanian swears in his affidavit that since 1976 Dynamis has caused the patent number of the patent-in-suit to be printed on all plastic containers of its Dynaweight epoxy balancing compound.

Plaintiffs conclude that the deposition of Bruce Puryear and the affidavit of John Caramanian establish facts that demonstrate the presence of plaintiffs' Dynaweight container in Leepoxy's laboratory, and Mr. Lee's personal knowledge that the container was in Leepoxy's laboratory. Plaintiffs further conclude that the deposition of Bruce Puryear proves that defendants knowingly possessed and referred to plaintiffs' container for its balancing epoxy and, since Mr. Caramanian has testified that all of the white Dynaweight containers manufactured since 1976 have carried an identifying notice of the '020 patent, defendants had actual knowledge of the '020 patent by at least June 1990.

The court disagrees with the plaintiffs. Even if, as defendants have agreed to assume for purposes of this motion, the defendants saw the '020 patent number listed on one or more Dynaweight containers, the plaintiffs have not shown that there is any evidence to support their contention that the defendants knew that a method of balancing rotors (by using an unpatentable epoxy composition) was subject to a patent which Leepoxy's customers would infringe by using Leepoxy's product to balance rotors.

Plaintiffs cite *Drexelbrook Controls v. Magnetrol Intern.*, 720 F.Supp. 397, 407 (D.Del.1989), *aff'd*, 904 F.2d 45 (Fed.Cir.

1990) in support of their position that a reasonable inference arises from the facts of this case that defendants had knowledge of the '020 patent. In *Drexelbrook*, the district court was called upon to decide whether an injunction should issue against defendant Magnetrol. In deciding that Drexelbrook was likely to succeed on the merits of its contributory infringement claim by showing the requisite knowledge on the part of Magnetrol that Drexelbrook's components were both patented and infringing, the court noted that:

> Since 1980, all Universal two-wire transmitters sold by Drexelbrook have been marked with the '834 patent number, P.App. at 174. Magnetrol used Drexelbrook's specifications in designing the KOTRON two-wire transmitter. P.App. at 359–364. Prior to developing its KOTRON two-wire transmitter, Magnetrol had customers ask for two-wire transmitters like those produced by Drexelbrook. P.App. at 372. There is thus a strong case that Magnetrol was well aware of the similarity between its product and the system covered by the '834 patent.

This court does not find *Drexelbrook* to be persuasive precedent in the present case. First, this court is unable to glean from the text of *Drexelbrook* whether it was even disputed that Magnetrol knew of the existence of Drexelbrook's patent. The issue in *Drexelbrook* appears to have centered on the question of whether Magnetrol had knowledge that its components *infringed* Drexelbrook's patent, which Magnetrol already knew existed. Second, there is no evidence in the case before this court that defendants used plaintiffs, specifications in developing their epoxy balancing compounds. As defendants point out, defendants did not obtain plaintiffs' product information sheets (which do not have any patent number printed on them) until approximately 1987 and Leepoxy obviously did not use the specifications when developing an epoxy balancing compound for General Electric in approximately 1978.

Consequently, for all the foregoing reasons, the court finds that the plaintiffs have not met their burden of showing that a genuine issue exists for trial with respect to their claim of contributory infringement and, accordingly, summary judgment will be granted in favor of the defendants on this issue.

### B. Section 271(b)—Inducement of Infringement

A brief review of the knowledge requirement of § 271(b) was set out in *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988):

> The patent statute provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (1982). Thus, a person infringes by actively and *knowingly* aiding and abetting another's direct infringement. Although section 271(b) does not use the word "knowing," the case law and legislative history uniformly assert such a requirement 4 D. Chisum, *supra*, §§ 17.04[2], [3] (and cases cited therein).
>
> [Defendant] argues that no proof of a specific, knowing intent to induce infringement exists. While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272, 229 USPQ 805, 813 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).

Later, in *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990), the Court discussed inducement of infringement and contributory infringement and stated:

> [T]he single concept of "contributory infringement" was divided between §§ 271(b) and 271(c) into "active inducement" (a type of direct infringement) and "contributory infringement," respectively. Section 271(c) codified the prohibition against the common type of contributory infringement referred to above, and made clear that only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement was necessary to establish contributory infringement. (Footnote omitted).

That, however, leaves open the question of what level of knowledge or intent is required to find active inducement under § 271(b). On its face, § 271(b) is much broader than § 271(c) and certainly does not speak of any intent requirement to prove active inducement. However, in

view of the very definition of "active inducement" in pre–1952 case law and the fact that § 271(b) was intended as merely a codification of pre–1952 law, we are of the opinion that proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement. (Footnote omitted).

Thus, it is clear that under § 271(b) an accused infringer must be shown to have actual knowledge of the patent and the infringement and have the actual intent to induce the infringement.

■ Defendants argue that they could not have had an actual intent to induce infringement when they did not know that the method used by Leepoxy's customers was patented. Plaintiffs, in response, focus their arguments on the fact that defendants had knowledge of plaintiffs' epoxy balancing compound and of its method for balancing rotors and intended that their balancing epoxy be used by their customers as a substitute for plaintiffs' balancing epoxy. Plaintiffs contend that such evidence is sufficient to support the induced infringement claim.

Again, the court disagrees with the plaintiffs. As discussed earlier, the plaintiffs have not presented any evidence in support of their claim that defendants had knowledge of the '020 patent or knowledge of infringement. It is clear that Leepoxy intended its epoxy balancing compound to replace plaintiffs' epoxy balancing compound. However, without knowledge of the '020 patent, defendants could not have possibly intended to induce the infringement of that patent.

Consequently, the court finds that plaintiffs have failed to show that there is a genuine issue for trial with respect to their claim of inducement of infringement and, accordingly, summary judgment will be granted in favor of the defendants on this issue.

### Conclusion

For all the foregoing reasons, defendants' motion for partial summary judgment is hereby GRANTED.