**WINN INCORPORATED, a California Corporation and Ben Huang, an individual, Plaintiffs,**

v.

**EATON CORPORATION, et al., Defendants.**

**No. CV 03–1568 SJO.**

United States District Court, C.D. California.

June 17, 2003.

Darrell L. Olson, Esq., Lynda J. Zadra–Symes, Esq., Paul D. Tripodi II, Esq. with the law firm of Knobbe Martens Olson & Bear LLP, in Irvine, CA, Curtis C. Chen, Esq. with the firm of Curtis Chen & Associates in Huntington Beach, CA, Connie M. Anderson, Esq. with the law firm of Ropers, Majeski, Kohn & Bentley in Los Angeles, CA, for Plaintiffs Winn Incorporated and Ben Huang.

Luke Dauchot, Esq. and Nick Saros, Esq. with Kirkland & Ellis in Los Angeles, CA, Kenneth G. Cole, Esq. with Thompson Hine LLP in Cleveland, OH, for Defendant Eaton Corporation.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT

OTERO, District Judge.

### I. *BACKGROUND*

This case stems from the alleged infringement of patented technology for golf club grips. Plaintiffs' First Amended Complaint ("FAC") succinctly sets out a claim for infringement of patents numbered 5,695,418 ("the '418 patent") and 5,797,813 ("the '813 patent"). (First Amended Complaint, *hereinafter* FAC, p. 2). Specifically, Plaintiffs aver "Defendants Eaton Corporation and Kent Sports, Incorporated have infringed U.S. Letters Patent Nos. 5,695,418 and 5,797,813 by offering for sale and selling the aforementioned WHISPER golf club grips." (Complaint, ¶ 10). In its First Amended Complaint, Plaintiffs set forth the same allegation (FAC, ¶ 10) and added that "KENT SPORTS INCORPORATED has also infringed U.S. Letters Patent Nos. 5,695,418 and 5,797,813 by offering for sale and selling golf club grips marketed under the trademark 'ALPHA.'" (*Id.* ¶ 11). The FAC also states Eaton had prior knowledge of the patents before committing these acts of infringement; and the acts of infringement were willful and wanton. (*Id.* ¶¶ 10, 14 and 15). The

parties have come to agree that the accused product is the Whisper golf club grip. (P. & A., p. 11).

### A. *Facts*

Plaintiffs are Winn Incorporated ("Winn") and Ben Huang. Before entering the sporting goods business, Dr. Huang was a mechanical engineer who worked as a professor and did consulting work for NASA. (Huang Decl. ¶ 3). He founded Winn in 1977. (*Id.* ¶ 4). Winn is a sporting goods company. In 1988 Winn started to import synthetic grips for racquets. (*Id.* ¶ 5). In 1990 Dr. Huang and Winn endeavored to improve the shock absorbency of their synthetic grip. (*Id.* ¶ 6). These efforts led to the issuance of two patents, United States Patent No. 5,695,418 ("the '418 Patent") issued to Dr. Huang on December 9, 1997, and United States Patent No. 5,797,813 ("the '813 Patent") issued to Dr. Huang on August 25, 1998. (*See* DUSF, 1–3). The patented products met with great commercial success. (Huang Decl. ¶ 7). Winn is the largest seller of soft synthetic after-market golf grips in the world, with sales in excess of $20 million. (*Id.* ¶ 10).

Defendants are Eaton Corp. ("Eaton") and Kent Sports Incorporated. Eaton is the moving party. Plaintiff alleges that in 2002, Eaton reverse-engineered the Winn grips. (*See* Confidential Symes Decl. Ex. 104). Eaton was then swiftly able to enter the market and compete with Winn. (*See* Confidential Symes Decl. Ex. 108). Consequently, Dr. Huang and Winn filed suit for patent infringement on July 3, 2002. (Complaint, p. 1). The parties tentatively reached a settlement agreement but were unable to finalize the deal. As a result, the suit continues. Trial is roughly four months away.

In the instant motion Defendant Eaton is moving for summary judgment on four

grounds: (1) the complaint does not adequately set forth claims for inducement and contributory infringement under 35 U.S.C. § 271(b) and (c); (2) Eaton's products do not infringe claim 1 of the '418 Patent; (3) its products do not infringe claims 1–3, 5–8, 10–11, 13, and 14–15 of the '813 Patent; and (4) the claims of the '813 Patent are invalid under 35 U.S.C. § 112, ¶ 2. (Notice & Motion, ¶ 1). In order to reach these issues, the Court must construe the meaning of various claim terms. (P. & A., pp. 4–5) *and Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed.Cir.1995)(*en banc* )[claim construction is a matter of law for the Court to decide].

## II. *LEGAL STANDARD*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for granting a motion for summary judgment. It states in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Pro. 56(c) (2003).

This standard has been explained by the Supreme Court of the United States in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. *See Celotex Corp., supra,* 477 U.S. at 331–32, 106 S.Ct. 2548. When the moving party does not bear the burden of proof at trial, it must point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. In *Anderson,* the Court set out the requisites needed to show there is no genuine issue as to a material fact.

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court also held that "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.*

Regarding the existence of a genuine issue of material fact, the Court held that, summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, the Court also noted that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. The nonmoving party has the burden of producing operative facts, and the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. If the operative facts are not presented, summary judgment is appropriate.

Once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. However, any infer-

ences from the underlying facts must be viewed in light most favorable to the nonmoving party. *Id.* at 587, 106 S.Ct. 1348.

In *Celotex,* the Court explained that the nonmoving party must designate specific facts showing a genuine issue for trial. Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party is not required to prove the absence of a genuine issue of fact, even with respect to an issue on which the nonmoving party bears the burden of proof. *Id.* at 325, 106 S.Ct. 2548. "Instead ... the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* The *Celotex* court also stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *id.* at 323–24, 106 S.Ct. 2548, and that the summary judgment procedure should not be regarded as a "disfavored procedural shortcut" but should be viewed as an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. 2548.

"[I]t is not [the task] of the district court, to scour the record in search of a genuine issue of triable fact. [The courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996). *See also Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir.2001) ["The district court need not examine the entire file for evidence establishing a genuine issue of fact,

where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."].

III. *DISCUSSION*

A. *Adequacy of the Complaint*

1. · *Defendant is Fully Cognizant of All Alleged Infringement and Accused Products*

Defendant Eaton argues that the allegations in the complaint and FAC are insufficient. Eaton is applying an argument for dismissal to a motion for summary judgment. The Defendant admits that Plaintiffs set forth their claim for inducement of infringement and contributory infringement in an interrogatory response. (P. & A., p. 2, II.15–20). However, Eaton argues that summary judgment should be granted because Plaintiffs failed to adequately aver inducement and contributory infringement in the FAC, citing *Gen–Probe, Inc. v. Amoco Corp.,* 926 F.Supp. 948, 962 (S.D.Cal.1996). In its opposition to the motion, Plaintiffs respond that the Federal Rules do not require such precise pleading. (Opp., p. 8; *citing e.g. Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir.1990)).

 Defendant Eaton is attacking the sufficiency of the complaint. A motion for summary judgment implicates the sufficiency of the evidence, not the pleadings. Defendant asks the Court to treat a motion for summary judgment as a motion to dismiss. The Court declines. Eaton never met its burden of showing that there is an absence of evidence to support Plaintiffs' case, as enunciated by the Supreme Court in *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

The case cited by the moving party Eaton, *Gen–Probe, supra,* 926 F.Supp. at 962, is completely inapposite. In *Gen–Probe,* defendants moved to dismiss for failure to

a state claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Gen–Probe,* 926 F.Supp., at 960. The motion before the Court in the instant case is a motion for summary judgment. As a result, *Gen–Probe* is not on point because the rules and standards governing a motion to dismiss differ markedly from those governing a motion for summary judgment. *Compare Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *and Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 Furthermore, the *Gen–Probe* court was actually troubled by the fact that the complaint lumped five defendants together in one common count of patent infringement, depriving defendants of fair notice as to their alleged wrong-doing. *Id.* at 960–61. In *Gen–Probe* the complaint accused defendants of patent infringement, inducement and contributory infringement "in a confusingly conclusory manner, accusing each of five defendants of three very different causes of action on two different patents, all in one conclusory sentence, without adequately specifying the grounds for plaintiff's belief that any of these entities have infringed." *Id.* at 960. There is no such problem in the instant case.[1] Plaintiffs' complaint suffers no such infirmities.

The *Gen–Probe* court was also troubled by the fact that "the complaint is devoid of any reference to infringing products (or contributorily infringing components)." *Id.* at 962. However in the instant case, Defendants state in its moving papers that both parties agree the allegedly infringing product is the Whisper grip. (P. & A., p. 11). It is disingenuous for Eaton to state precisely which product is accused in the instant action and simultaneously claim it has not been given sufficient notice of its allegedly infringing conduct to mount a defense. *Self Directed Placement Corp.,* 908 F.2d at 466 [The rules clearly "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."]

In view of the fact that the discussion in the instant motion for summary judgment has been narrowed by the parties to cover a single allegedly infringing product, it is clear that defense counsel is fully apprised and aware of all allegedly infringing conduct. Accordingly, Plaintiffs' complaint is adequate because it facilitated the precise disclosure of claims and defenses and helped to narrowly define facts and issues before the Court. *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)["simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues"]; *see also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir. 2000).

---

1. Instead, Plaintiffs aver "Defendants Eaton Corporation and Kent Sports, Incorporated have infringed U.S. Letters Patent Nos. 5,695,418 and 5,797,813 by offering for sale and selling the aforementioned WHISPER golf club grips." (Complaint, ¶ 10). In its First Amended Complaint ("FAC"), Plaintiffs set forth the same allegation (FAC, ¶ 10) and add that "KENT SPORTS INCORPORATED has also infringed U.S. Letters Patent Nos. 5,695,418 and 5,797,813 by offering for sale and selling golf club grips marketed under the trademark 'ALPHA.' " (*Id.* ¶ 11). The parties have come to agree that the accused product is the Whisper golf club grip. (P. & A., p. 11).

## B. *Knowledge and Sale*

■ Defendant Eaton makes a related and somewhat tenuous argument that Plaintiffs failed to adequately allege violations of 35 U.S.C. § 271(b) or (c).(P. & A. p. 7). Subsections (b) and (c) of 35 U.S.C. § 271 set forth the rules for inducement of infringement and contributory infringement:

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer. (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

To prove inducement under 35 U.S.C. § 271(b), Plaintiffs must provide evidence that Defendant Eaton knowingly aided and abetted direct infringement of the patent. *See Wayne Automation Corp. v. R.A. Pearson Co.*, 790 F.Supp. 1505, 1507 (E.D.Wash.1991)[addressing a motion to dismiss pursuant to Rule 41(b) ].[2]

■ Defendant Eaton argues that summary judgment should be granted because the complaint fails to aver that Defendant (1) knowingly induced infringement; and (2) sold a material component of a patented invention, knowing that the component was especially adapted for use in the invention and that it was not a staple article of commerce. (P. & A., p. 8, *citing Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed.Cir. 2002); *and Gen–Probe, supra*, 926 F.Supp. at 960 n. 18). Again, Defendant confuses a motion for summary judgment with a motion to dismiss.

A motion to dismiss is usually brought at an early stage of litigation and "[d]ismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.1997). *Gen–Probe* is inapposite for all the reasons stated above. *Chemque, supra*, 303 F.3d at 1304–1305 stands for the principle that "to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement ... second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Chemque*, 303 F.3d at 1304–1305 (citations omitted).

■ In the instant case Plaintiffs aver "Defendants Eaton Corporation and Kent Sports, Incorporated have infringed U.S. Letters Patent Nos. 5,695,418 and 5,797,-813 by offering for sale and selling the aforementioned WHISPER golf club grips." (Complaint, ¶ 10). In its FAC, Plaintiffs set forth the same allegation (FAC, ¶ 10) and add that "KENT SPORTS INCORPORATED has also infringed U.S. Letters Patent Nos. 5,695,418 and 5,797,-813 by offering for sale and selling golf

---

**2.** The elements of contributory infringement include (1) knowledge that an article is being used as a material element in an infringing product and (2) a showing that the article being used is not a staple item of commerce with no substantial non-infringing uses. *MacNeill Engineering Co. v. Trisport Ltd.*, 59 F.Supp.2d 199, 201; *citing Marsh–McBirney, Inc. v. Jennings*, 1991 WL 365045, 22 U.S.P.Q.2d 1621 (C.D.Cal.1991). Circumstantial evidence will suffice to defeat the instant motion, provided that it raises a triable issue of fact. *Wayne Automation, supra*, 790 F.Supp. 1505, 1507 (E.D.Wash.1991)[addressing a motion to dismiss pursuant to Rule 41(b) ]; *citing Moleculon Research Corp. v. CBS Inc.*, 793 F.2d 1261, 1272 (Fed.Cir.1986).

club grips marketed under the trademark 'ALPHA.'" (*Id.* ¶ 11). The FAC also states Eaton had prior knowledge of the patents before committing these acts of infringement; and the acts of infringement were willful and wanton. (*Id.* ¶¶ 10, 14 and 15). The parties have come to agree that the accused product is the Whisper golf club grip. (P. & A., p. 11). In view of these facts, it is apparent that Plaintiffs adequately set forth all the elements of inducement and contributory infringement in its complaint.[3] But that is not the primary reason why Defendants' argument fails. Eaton never met its burden of showing that there is an absence of evidence to support the nonmoving party's case, as it must in a motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Rather, Defendant Eaton merely raised a question about the adequacy of the complaint. Accordingly, Eaton's shot at summary judgment did not land in the fairway and is denied.

### C. *Infringement*

█ "An infringement analysis entails two steps. The first step in the analysis is determining the meaning and scope of the patent claims asserted to be infringed." *Markman, supra,* 52 F.3d at 976; *citing Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821 (Fed.Cir.1992). "The second step is comparing the properly construed claims to the device accused of infringing." *Id.* Both parties agree that the allegedly infringing Eaton product is the Whisper grip. (P. & A., p. 11). "The Whisper golf

---

**3.** Subsections (b) and (c) of Section 271 are closely related. 5 DONALD S. CHISUM, CHISUM ON PATENTS § 17.04(3), at 17–72 (2001). According to the history behind the statute and the case law interpreting § 271(c), "only proof of a defendant's *knowledge,* not *intent,* that his activity caused infringement was necessary to establish contributory infringement." *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468 (Fed.Cir. 1990). Section 271(b), on the other hand, "codified the prohibition against all other types of activity which, prior to 1952, had constituted 'contributory infringement.'" *Id.* "On its face, § 271(b) is much broader than § 271(c) and certainly does not speak of any intent requirement to prove active inducement." *Id.* In *Hewlett–Packard, supra,* 909 F.2d at 1468, the court stated "[h]owever, in view of the very definition of "active inducement" in pre–1952 case law and the fact that § 271(b) was intended as merely a codification of pre–1952 law, we are of the opinion that proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Id.* Accordingly, active inducement requires a showing of knowledge and intent; whereas contributory infringement requires only a showing of knowledge. *See Id.* "It is clear that under § 271(b) an accused infringer must be shown to have actual knowledge of the patent and the infringement and have the actual intent to induce the infringement."

*L.A. Gear v. E.S. Originals,* 859 F.Supp. 1294, 1300 (C.D.Cal.1994); *quoting Dynamis v. Leepoxy Plastics, Inc.,* 831 F.Supp. 651, 657 (N.D.Ind.1993). In the instant case, Eaton is accused of deliberately reverse-engineering the patents and products at issue and offering their own copies for sale. "The most common pre–1952 contributory infringement cases dealt with the situation where a seller would sell a component which was not itself technically covered by the claims of a product or process patent but which had no other use except with the claimed product or process." *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468 (Fed.Cir.1990). Section 271(c) codified the prohibition against that type of contributory infringement. *Id.* Section 271(b) is directed at "all other types" of contributory infringement. *Id.*

In the instant case, the complaint clearly sets forth Defendants' knowledge and intent to sell a product that can have no substantial non-infringing use. In opposition to the instant motion, Plaintiffs go one step further and offer proof that Eaton deliberately reverse-engineered Plaintiffs' product and offered its own copy for sale. Accordingly, it is difficult to see how these acts fail to raise the question of contributory infringement or inducement because Eaton is essentially accused of manufacturing and selling a direct copy of the patentee's product.

club grip is a combination of a rubber underlisting sleeve about which is spirally wrapped a strip." (*Id.* p. 11; *citing* Ex. 2, Plaintiffs' Int. Response No. 4).

 There are generally three primary intrinsic sources available to the Court to help construe the meanings of claim terms. "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Markman*, 52 F.3d at 979. First, the Court looks at the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996); *see also Markman*, 52 F.3d at 979. Second, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. *Id.; citing also Markman*, 52 F.3d at 979. Claims must be read in view of the specification. *Id.* A patentee is entitled to be her own lexicographer. *See Markman*, 52 F.3d at 979–80. "The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." *Vitronics*, 90 F.3d at 1582. Third, the court may also consider the prosecution history of the patent, if in evidence. *Id.* Finally, "in most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such cases it is improper to rely on extrinsic evidence." *Id.; citing Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed.Cir.1995). Only if necessary, however, the Court may look to extrinsic evidence. *Id.*; see also *Markman*, 52 F.3d. at 980 [The court may, in its discretion, receive extrinsic evidence in order to 'aid the court in coming to a correct conclusion' as to the 'true meaning of the language employed in the patent'].[4] The Court may also receive expert testimony to aid in understanding what the patent claims actually say. *Id.* at 981. "Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Id.; citing U.S. Indus. Chems., Inc. v. Carbide & Carbon Chems. Corp.*, 315 U.S. 668, 678, 62 S.Ct. 839, 86 L.Ed. 1105 (1942). Testimony of the patentee or his attorney on the proper construction of claims is not entitled to deference. *Markman*, 52 F.3d at 983.

### a. The '418 Patent

 Claim 1 is the only claim at issue in the '418 Patent. It reads as follows:

The combination of a handle for an impact imparting device and shock absorbing grip applied over such handle to conform to the external configuration of such handle, said combination comprising: a strip which is spirally wrapped about said handle, the strip consisting of an open-pored textile layer having an inner surface adhered to and abutting said handle. (P. & A., p. 10–11; *citing* Claim 1 at col. 4, lines 31–37).

The moving party Eaton would like the Court to construe the meaning of the claim terms (1) "handle" and "grip"; and (2) "adhered to and abutting." Eaton argues that although the terms "handle" and "grip" can be used interchangeably the language of the '418 Patent define two distinct elements related to an impact im-

---

**4.** As this discussion indicates, the Federal Circuit has offered inconsistent guidance on this question in several recent opinions. *Compare Vitronics*, 90 F.3d 1576; *contra Pitney Bowes,* *Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 51 U.S.P.Q.2d 1161 (Fed.Cir.1999); *and Eastman Kodak v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547.

parting device: "In sum, 'handle means a handle or shaft, bare of a grip.' [Whereas a] 'Grip' means something placed over the handle to assist one in gripping the handle." (P. & A., p. 11). In other words, the handle is part of the impact imparting device whereas the grip refers to something placed over the handle. (*See id.*). Eaton interprets the term "adhered to and abutting" as "fastened to and touching." (*Id.* at 1.23). Defendant Eaton then contrasts this language with the definition of the allegedly infringing Whisper grip: "The Whisper golf club grip is a combination of a rubber underlisting sleeve about which is spirally wrapped a strip." (*Id.* p. 11; *citing* Ex. 2, Plaintiffs' Int. Response No. 4).

Using its interpretation of the claim terms as a premise, Defendant Eaton argues that the Whisper grip does not literally infringe the '418 Patent because "the strip of the Whisper Grip is 'adhered to and abutting' the rubber sleeve of the grip; it is not 'adhered to and abutting [the] handle' of the golf club, which is required by Claim 1 of the '418 Patent." (P. & A., p. 12). Essentially, they are arguing that "the rubber sleeve" of the Whisper grip is different than the claim term "handle" used in the '418 Patent. To bolster this argument, in its Reply, Defendant Eaton argues that Plaintiffs' subsequent patent, the '813 Patent, similarly distinguishes between a "handle" and "sleeve."[5] (Reply, p. 5). Furthermore, Eaton contends that the prosecution history of the '418 Patent distinguishes between the term "handle and sleeve." (Reply, p. 7).

In its Opposition, Plaintiffs contend that "adhered to" means "to hold fast." (Opp. at p. 13). On that point, the parties are in agreement. *Compare*, Opp. at p. 13 and P.

& A. at p. 11. However, Plaintiffs argue that "adhered to" does not require that elements be directly touching. (Opp. at p. 13). Plaintiffs offer the example of floor tile being held fast to a concrete foundation, even though there is a paper underlay between the tile and the foundation. (*Id.*). As for the term "abutting," Winn proposes the following definition: "to touch or end at one end or side" or alternatively, to "lie adjacent." (Opp. at p. 13; *citing* American Heritage Dictionary of the English Language, 4th Ed.). Plaintiffs contend that there is no requirement for the items to be touching. According to Plaintiffs, "adhered to and abutting" the handle means "held to and adjacent to the handle." (*Id.*).

To support its argument, Plaintiffs point to the prosecution history of the '418 Patent. (*Id.* at p. 14). During the prosecution of the patent, the examiner rejected the claim specifying that the textile layer be "adhered directly to the handle" in view of several prior art references. (Opp. at p. 14).

The Court finds Plaintiffs' argument unpersuasive. Adhered to means to "hold fast." *The American Heritage* Dictionary of the English Language, Fourth Edition (2000). Abutting is commonly defined as touching, lying adjacent to or bordering upon. *See id.* Plaintiffs' argument hinges on the contention that abutting might not necessarily require that the device touch the handle. To support that contention, they refer the Court to the prosecution history. (Opp. at p. 14). However, before proceeding to the prosecution history, the Court should first look at the claims and then the specification. *Markman*, 52 F.3d at 979. In the specification, the last sentence provides that the patented device

---

5. Plaintiffs supply no authority, and the Court is unaware of any authority, suggesting it is appropriate to examine a subsequent patent to determine the meaning of claim terms used in a prior patent. Accordingly, the Court rejects this approach.

have "an adhesive provided along the inner surface of the textile strip securing the strip to the handle." (Saros Decl., Ex. 3, '418 Patent, Col. 4, Claim 1, II.54–56.) Further, in the specification the handle is described in print and in the accompanying drawings as "the handle of a tennis racket." (*Id.*, Col.2, II.40–45). Accordingly, it seems unambiguous from the specification and figures referenced therein that the patented device was to be touching and attached to the handle, that is the stem extending from the impact imparting device (i.e., club or racket). Between the shock absorbing felt layer, and the joint formed by the adhesive tape and the handle, there is "a conventional layer 30." (*Id.* at Col 3, II.4–10). Viewing this language, it is clear that the patent contemplates no sleeve between the handle of the impact imparting device and the strip. Contrary to Plaintiffs' assertions, the handle described in its claims and specifications is not the same as a rubber sleeve. That being said, it requires further analysis to determine whether the Whisper grip infringes Plaintiffs' product. There appears to be no literal infringement because the strip of the Whisper grip is adhered to and abutting a rubber sleeve. It is not adhered to and abutting the handle of the golf club which is required by claim 1 of the '418 Patent. The Court now must turn to perform analysis under the doctrine of equivalents to determine if a triable issue of fact exists.

### Doctrine of Equivalents

The policy behind the doctrine of equivalents is to prevent the unscrupulous copyist from avoiding liability by making only colorable changes. *See Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The theory on which the doctrine is founded is that "if two devices do the same work in substantially the same way, and accomplish substantially the same re-sult, they are the same, even though they differ in name, form or shape." *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)[patented welding device using one kind of chemical; challenged product was essentially the same device using another kind of chemical, and the Court held that a product that performs in a manner slightly different from a patented product still infringes on that product]; *quoting Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1929). The test applied in *Graver Tank* is commonly referred to as the "function-way-result" test. That case can be stated as follows: If a patent claim has five elements and an accused device copies four of those elements exactly but omits a relatively minor fifth element, the Defendant may not be liable for literal infringement; but may be liable under the doctrine of equivalents. *See id.* at 607, 70 S.Ct. 854; and 35 U.S.C. § 112.

What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was. *Id.; accord Warner–Jenkinson Co., Inc.*

*v. Hilton Davis Chem. Co.,* 520 U.S. 17, 24, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

■■■ "An applicant can describe an element of his invention by the result accomplished or the function served, rather than describing the item or element to be used." *Warner–Jenkinson Co., Inc., supra,* 520 U.S. at 27, 117 S.Ct. 1040; *see also* 35 U.S.C. § 112. When applying the doctrine of equivalents, each claim element is to be tested individually, comparing it to the relevant element in the accused device. *Id.* at 29, 117 S.Ct. 1040. ["Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."]

■■■ In the instant case, Defendant Eaton tries to distinguish the Whisper grip from Plaintiffs' product on the grounds that in the Whisper grip, it "is 'adhered to and abutting' the rubber sleeve of the grip; it is not 'adhered to and abutting [the] handle' of the golf club, which is required by Claim 2 of the '418 Patent." (P. & A., p. 12). In effect, Defendant Eaton is saying that its product is different because it is wound around a rubber sleeve and does not necessarily touch the handle of the impact imparting device. The problem with this argument is that, as Plaintiffs suggest, Defendants appear to be adding an element to an already patented device. (Opp. at p. 17) Accordingly, summary judgment is not warranted on the grounds that a substantial question remains as to Defendant Eaton's liability under the Doctrine of Equivalents. In the Court's view, there does not appear to be any substantial difference between a grip· that is wound around the handle itself or the handle plus a rubber sleeve. At any rate, in view of the very slight difference implicated by the addition of the rubber sleeve, there is a substantial question remaining as to whether persons reasonably skilled in the art would have known of the interchangeability of the accused device and Plaintiffs' product. *Warner–Jenkinson Co., Inc.,* 520 U.S. at 24, 117 S.Ct. 1040. More importantly, it seems that Defendant has merely added an additional · claim term-the rubber sleeve. If Defendant had patented a product employing Winn's technology with the addition of a rubber sleeve, this might be a case of "blocking patents" and ripe for settlement. However, it seems that Plaintiffs' '813 Patent contemplates the addition of a rubber sleeve. (Saros Decl., Ex. 4, '813 Patent, Col. 8).

*Prosecution History Estoppel*

■■■ Defendant Eaton raises the additional argument that the Whisper grip does not infringe Plaintiffs' product due to the operation of prosecution history estoppel.[6] In the instant case, Defendants

---

6. This is a simple concept whereby, during the prosecution of the patent, the patentee becomes bound by representations made to the PTO. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.,* 535 U.S. 722, 739, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002); *and Warner–Jenkinson Co., supra,* 520 U.S. at 30–31, 117 S.Ct. 1040. For example, a patentee might try to patent a new type of pencil. Calling attention to the relevant prior art, the PTO would probably respond that the patent will not be issued because pencils have been around for a long time.· If the patentee responds "my pencil is different because it is made out of some new space-age material that never wears out," then the patent might be granted. But it will be impossible for the patentee to claim anything more than a pencil made out of the new space-age material. The patentee is estopped from claiming anything more. Accordingly, the patentee would not be able to sue existing pencil makers for in-

claim that during the prosecution of the '418 Patent, Plaintiffs originally stated that the claimed grip be "adhered to" the handle. (P. & A., at p. 13). In the face of resistance from the patent examiner and in light of prior art references including British Patent No. 979,242 ("the Onions Patent"), that claim was abandoned and replaced by the term "adhered to and abutting" the handle. *Id.* However, for prosecution history estoppel to apply, the patentee would have to narrow his claims during the prosecution of the patent to an extent that the accused device is excluded from the claims of the patent. In the instant case, there is no indication that the terms were narrowed to exclude the addition of a rubber sleeve. (*See* Ex. 5, '418 Wrapper, Jan. 29, 1993 Office Action at Ex. pp. 66–68). The Onions Patent discloses a leather grip for a golf club wherein the shaft or handle of the club is separated from a leather coating by a "a resilient cellular material such as rubber or .. thermoplastic material" that may be wound around the shaft. (Ex. 7, Onions Patent, Col. 2, II.5–10). However, it is unclear why the patent examiner cited the Onions Patent and in response, Plaintiffs stated "[a]pplicant does not understand why Onions was even cited." (Ex. 5, '418 Wrapper, Jan. 29, 1993 Office Action at Ex. pp. 73). Accordingly, prosecution history estoppel does not apply in the instant case because it is unclear whether the addition of the rubber sleeve was contemplated by the patent examiner or patentee during the prosecution of the patent.

b. *The '813 Patent*

██ Defendant Eaton raises two issues with regard to the '813 Patent: (1) its products do not infringe claims 1–3, 5–8, 10–11, 13, and 14–15 of the '813 Patent; and (2) the claims of the '813 Patent are invalid under 35 U.S.C. § 112, ¶ 2. (Notice & Motion, ¶ 1). More background is needed to understand Eaton's argument. During the prosecution of the '813 Patent, the patentee's attorney committed a typographical error that made its way into the final patent. (Saros' Decl. Ex. 6, Proposed Amendment, p. 80). In the claims at issue in the instant case, the felt layer is described as having "outwardly and downwardly" slanted side edges formed along the length of the felt layer. (*Id.*, Ex. 4, '813 Patent, *e.g.* Col. 8, II.20–22). However, in the specification, the same features are described as "outwardly and upwardly slanted side edges." (*Id.* at Col. 5, II.47–49). Based on this apparent contradiction between the claims and specification, Defendant Eaton has conceived of its own figure drawing based on the typographical error and argues that all of the claims should be stricken because (1) the Whisper grip clearly employs a layer with "outwardly and upwardly" slanted side edges (P. & A., pp. 16–18); and (2) the erroneous specification operates to invalidate Plaintiffs' patent for failure to set out the preferred embodiment of the invention pursuant to 35 U.S.C. § 112 (P. & A., pp. 18–20).

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed." *Markman, supra,* 52 F.3d at 976; *citing Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821 (Fed.Cir. 1992). "The second step is comparing the properly construed claims to the device accused of infringing." *Id.* "Lex, rejicit superflua, pugnantia, incongrua," it is a time worn maxim that the law rejects superfluous, contradictory and incongruous things. *See* Francis Bennion, Statutory Interpretation § 316, at 776 (3d ed.1997).

---

fringement; nor could the patentee sue a subsequent manufacturer who developed a still more revolutionary pencil made out of a different unclaimed material.

This doctrine has its application in patent law under the doctrine of "claim differentiation." *Transmatic Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1277 (Fed.Cir. 1995)[the Court may not import into the first claim additional limitations derived from language described in the third claim]. Similarly, the Court hesitates at applying typographical error in the instant case to completely change the meaning of a host of claims in the '813 Patent. A claim should be interpreted so as to preserve its validity. *Modine Mfg. Co. v. United States International Trade Commission,* 75 F.3d 1545 (Fed.Cir.1996). In the instant case, it would be obvious to a person skilled in the art that the only possible construction is that the felt have outwardly and upwardly slanting side edges. *See Warner–Jenkinson Co., Inc.,* 520 U.S. at 24, 117 S.Ct. 1040. In the instant case, during the prosecution history of the '418 Patent, the patent examiner states "in order to permit overlapping the wrap (sic), it would have been obvious to 'slant the underside outward and upward.'" (Saros Decl., '418 Wrapper, Ex. 5, p. 68). Plaintiffs also point out that if Defendants' construction were adopted, the felt would be exposed to the elements, making it impossible for the grip to be water resistant as contemplated by the '813 Patent. (Opp. at p. 24). Accordingly, because it would be obvious to any person skilled in the art that the proper claim term would be "outwardly and upwardly" slanted side edges, Defendants' argument fails as to the infringement of '813 Patent and section 112. *See Warner–Jenkinson Co., Inc.,* 520 U.S. at 24, 117 S.Ct. 1040; *and* 35 U.S.C. § 112 ["The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, . . . to make and use" the invention.]. Moreover, the

figures, claims and further specification of the '813 Patent make it clear that Defendants' proposed construction is unintended and that the term "outwardly and upwardly" is the proper description of Plaintiffs' product.

The Motion is hereby DENIED.

**IT IS SO ORDERED.**